UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                    Bankruptcy No. 10-30902

Thomas M. Grabanski and                   Chapter 11
Mari K. Grabanski,

                    Debtors.
_____/


**MEMORANDUM AND ORDER**

Two motions to dismiss this case are pending before the Court.   Creditor PHI

Financial Services, Inc. filed the first Motion to Dismiss on March 19, 2012 shortly

after objecting to Debtor's Proposed Plan and Disclosure Statement.   Creditors J.R.

Simplot and Choice Financial Group joined the Motion to Dismiss and filed their

own objections to Debtor's plan.   Debtors resisted the Motion to Dismiss.   The

Court held a hearing on Debtors' Chapter 11 plan and PHI's Motion to Dismiss on

June 4, 2012.   At that hearing, the Court ruled that the proposed plan was not

feasible and thus not confirmable for that and other reasons.   The Court took the

Motion to Dismiss under advisement and allowed additional time for briefing by all

parties.   Debtors specifically stated the desire to file another plan.

The United States Trustee filed the second Motion to Dismiss on November 7,

2012.   Interested parties John and Dawn Keeley joined the motion.   Debtors again

resisted.   The Court held a hearing on these motions to dismiss in conjunction with

other matters on January 9, 2013.   The Court indicated Debtors had never filed another plan and the case would be dismissed, but allowed the parties to submit briefing on whether it should be dismissed with or without prejudice.   After careful consideration, the Court concludes that dismissal of this case with prejudice is appropriate.

## I.   FACTUAL BACKGROUND

This case is one of three separate, but related, bankruptcy cases.   The first case—the one involved here—is a voluntary Chapter 11 filed by Thomas and Mari Grabanski on July 22, 2010.   The second case In re Grabanski Grain, LLC (No. 10-30924) was filed by the Grabanskis as a voluntary Chapter 11 on July 23, 2010. It was later converted to Chapter 7.   The third case is In re Keeley and Grabanski Land Partnership ("KGLP") (No. 10-31482).   In re KGLP was filed as an involuntary Chapter 11 but was also later converted to Chapter 7.   These three cases have accounted for more than 1160 filings and spawned several contentious adversary cases that have been tried.

### A.   Pre-Bankruptcy Facts[1]

---

[1] Many of these Pre-Bankruptcy Facts—which are necessary to give the case context—are taken from the Memorandum and Order Granting Motion to Convert Case from Chapter 11 to Chapter 7 in In re Keeley and Grabanski Land Partnership (No. 10-31482), ECF Doc. No. 117, filed on October 11, 2011.

The Grabanskis (Debtors) and John and Dawn Keeley were North Dakota farmers.   They formed KGLP on February 1, 2007.   KGLP purchased several tracts of farmland, including two large tracts in Texas.   These tracts have been referred to in these cases as the "Lenth Parcel" and the "Unruh Parcel."   Both tracts were subject to seller-financed mortgages.

On January 1, 2008, the Grabanskis and the Keeleys formed G&K Farms, a partnership that would rent the farmland owned by KGLP.   The entity that rented the farmland was supposed to make the payments on the notes secured by the land in lieu of making a rent payment to KGLP.   In order to conduct its farming operation in 2008, G&K Farms obtained financing from Choice Financial.   To do so, G&K Farms provided a blanket lien to Choice Financial on its property, including crops.

Although the farms should have been profitable, Thomas Grabanski informed the Keeleys in 2008 that G&K Farms had sustained a $2.5 million operating loss even though the crops had been insured.   As a result of the losses, KGLP sold its properties except the Lenth and Unruh Parcels.   The proceeds were used to partially pay down G&K Farms' operating line at Choice Financial.

The Keeleys assert that, in August 2008, Thomas Grabanski also obtained $7 million in secured financing from PHI.   He borrowed on behalf of G&K Farms and other entities in which he was involved.   He allegedly signed the PHI agreement on

3

behalf of G&K Farms as a co-borrower, even though the operating agreement stated he could not borrow more than $1,000 without John Keeley's permission.   The Keeleys assert that Grabanskis falsely told them that he signed this note personally, rather than for G&K Farms.

In February 2009, G&K Farms borrowed an additional $1.2 million from Crop Production Services, Inc. for the 2009 growing season.   However, after planting its crop in 2009, G&K Farms discontinued operations.   The Keeleys have not been told where the proceeds of the crop sales or insurance proceeds from that season went.

In about May 2009, Thomas Grabanski told the Keeleys that he would pay all of G&K Farms' debt if the Keeleys would assign their partnership interest in both G&K Farms and KGLP to the Grabanskis.   On September 24, 2009, the Keeleys and the Grabanskis executed an Agreement to Assign Partnership Interests ("Transfer Agreement"), wherein the Keeleys agreed to assign their partnership interests effective April 30, 2009.[2]   In the Transfer Agreement, the Grabanskis agreed to pay all of both partnerships' debts, liabilities, and expenses.   The Keeleys were led to believe G&K Farms' crop proceeds and insurance payments would be

---

[2] According to Dawn Keeley, this agreement came after "months of high levels of distrust, inconsistent records, and constantly changing (sometimes daily) financial records provided by Grabanski and our bookkeeper."   (Aff. of Dawn Keeley, ECF Doc. No. 540, at 1.)

4

used to pay the Choice Financial operating line of credit.   As it turned out, very little of those proceeds went to pay down the Choice Financial line.

In 2010, the Grabanskis created a new entity, Texas Family Farms, LLC that under the dissolution agreement was to be the successor to G&K Farms.   Texas Family Farms rented and farmed the Lenth and Unruh Parcels.   Despite renting the land, Texas Family Farms allegedly did not make the note payments to the Lenths and the Unruhs.   KGLP also failed to pay other expenses as well.   The Keeleys also assert that much of G&K Farms' equipment has been re-titled to other Grabanski entities, traded for other equipment, given away, or lost.   However, G&K Farms has continued to exist in some capacity that Debtors have never fully described.

The Lenths sent a notice to KGLP on July 12, 2010, stating that KGLP was in default under its promissory note.   The letter demanded payment of $2,144,077.50, plus $405.30 per day in accruing interest.   The letter further stated that if the entire unpaid balance, plus accrued and unpaid interest, attorney's fees, and expenses was not paid on or before August 31, 2010, the Lenths would commence foreclosure proceedings.

While much of this was happening, the Grabanskis and their various entities defaulted on their loans from another lender, AgCountry Farm Credit Services.

AgCountry obtained state court orders directing the Grabanskis to surrender

AgCountry's collateral (crops and equipment), which was held by the Grabanskis

and their related entities.   The Grabanskis disobeyed those orders.   The state court

scheduled a contempt hearing for July 22, 2010, at 11 a.m.   The Grabanskis filed a

voluntary Chapter 11 bankruptcy petition in their own names at 10:59 a.m. that day,

staying the contempt hearing.

### B.      The Grabanskis' Bankruptcy Case

The original deadline for Debtors to file bankruptcy schedules and statements

was August 5, 2010.   The day before the deadline, Debtors sought and were granted

an extension until August 20, 2010.   On August 20, 2010, Debtors again filed a

motion to extend the time to file their schedules and statements.   Debtors were

granted an additional extension until August 25, 2010.   On August 25, 2010,

Debtors filed another motion to extend the time to file their schedules and

statements, and the Court granted yet another extension until September 1, 2010.

On September 1, 2010, Debtors filed some of their schedules and statements.

The Court issued an order the following day, however, notifying Debtors that they

had not filed Schedule C, Schedule D, a Statement of Financial Affairs or a

Summary of Schedules.   Debtors filed these additional schedules and statements on

September 9, 2010.   They filed amended schedules on September 20, 2010, and October 20, 2010.

The exclusivity period for Debtors to file a Chapter 11 plan and disclosure statement was set to expire on November 24, 2010.   Debtors filed a motion to extend the exclusivity period until January 7, 2011.   AgCountry objected.   It argued Debtors did not establish cause entitling them to an extension.   It pointed out that Debtors had not shown good faith progress toward reorganization, had not even suggested they were paying bills as they came due, had not filed the required monthly accounting statements and had not identified any diligent efforts to negotiate or file a plan.   AgCountry further argued that Debtors were not proceeding in good faith in their case.   John and Dawn Keeley also objected.   After a hearing on December 21, 2010, the Court granted the extension over the objections.

The January 7, 2011, exclusivity deadline came and went without the filing of a plan and disclosure statement.   The Court held a hearing on January 12, 2011, on a motion for relief from stay filed by AgCountry.   The Court continued the matter and ordered Debtors to file a plan and disclosure statement within fourteen days. Those fourteen days also came and went without the filing of a plan and disclosure statement.

7

On March 6, 2011, Debtors filed another motion to extend the exclusivity period for filing a plan and disclosure statement.   In its motion, Debtors stated they had made significant progress toward producing a feasible plan of reorganization. Specifically, they represented that they had achieved a stipulation with AgCountry—Debtors' largest secured creditor—to sell certain real estate.   Debtors asserted this sale would generate millions of dollars of proceeds which would reduce their debt to AgCountry, allow Debtors to focus on dealing with creditors Choice Financial and the Hanson-Tallackson Parties,[3] and make a favorable distribution to general unsecured creditors more likely.

The United States Trustee objected to further extension of the exclusivity period.   He pointed out the history of extensions and missed deadlines recited above in support of his objection.   He noted that the case had been pending for seven months without a disclosure statement or plan filed and asked the Court to deny the extension and to impose hard and fast deadlines on Debtors for filing their disclosure statement and plan.   The Keeleys and Horse Creek Farms also objected to further extension of the exclusivity period for essentially the same reasons as the United States Trustee.

---

[3] The Hanson-Tallackson Parties are collectively Colorado Farms, Hanson-Colorado Farms, James Tallackson, Carol Tallackson, Brian Hanson, Ranell Hanson, Jeffrey Hanson and Amanda Hanson.

The Hanson-Tallackson Parties also objected based on a lack of cause for an extension and Debtors' bad faith.   They asserted Debtors' bad faith was evidenced by the failure to file the disclosure statement and plan as well as Debtors' failure to provide accurate bankruptcy schedules.   With regard to the bankruptcy schedules, Debtor Thomas Grabanski testified during his Rule 2004 examination that he could not recall any involvement with the preparation of the schedules filed on September 9, 2010, other than to review the work of his accountant.   As to the amended schedules filed on October 20, 2010, Debtor Thomas Grabanski testified he had no recollection of being involved with the preparation of the amended schedules. Further, he could not say whether the bankruptcy schedules were true and correct, yet amended schedules were not filed.   The Hanson-Tallackson Parties therefore asserted that Debtors' creditors were left with wholly unreliable schedules.   The Hanson-Tallackson Parties argued that Debtors' lack of good faith was further demonstrated by the numerous requests for extensions of time without a plan ever being filed.   They asserted this showed Debtors were not seeking to reorganize and instead were employing delay tactics.

After a hearing on March 30, 2011, the Court denied Debtors' motion to extend the exclusivity period and ordered Debtors to file a plan and disclosure statement within fifteen days.   On April 8, 2011, Debtors filed a motion to

9

reconsider the Court's order denying the motion to extend the exclusivity period.

The Court denied the motion.   Debtors filed an appeal to the Bankruptcy Appellate

Panel (BAP) and a motion for stay pending appeal.   The Court initially denied the

motion for stay pending appeal, but then vacated its order and granted the motion.

The BAP determined that it lacked jurisdiction because the order denying

their motion to extend the exclusivity period was not a final order.   It dismissed the

appeal on September 6, 2011.

Following the denial of the appeal, and in light of Debtors' continued failure

to file a plan and disclosure statement, PHI filed its first Motion to Dismiss on

September 12, 2011.   PHI offered the following grounds for dismissal: Debtors

continued to consume resources of the estate without a reasonable likelihood of

Debtors proposing a confirmable plan; Debtors failed to comply with Court orders

requiring the filing of a plan by a set date; Debtors failed to file a disclosure

statement or obtain confirmation of a plan; and Debtors grossly mismanaged the

bankruptcy estate and failed to provide complete and accurate information regarding

the assets and affairs of their estate.[4]

Several parties objected to PHI's Motion to Dismiss.   First, Debtors objected

and took issue with PHI identifying only what Debtors had not accomplished in the

---

[4] The undersigned took over this and the other Grabanski-related cases on
September 15, 2011.   The Honorable William A. Hill retired August 21, 2011.

case.   They asserted that their case and its progress should be considered in

conjunction with all the work that had been done in In re Grabanski Grain (No.

10-30924) and In re KGLP (No. 10-31482).   They further asserted that they had

been dealing with several adversary proceedings filed against them including a

nondischargeability case in which they had prevailed.   Debtors maintained that they

could not propose a confirmable plan until all of the adversary proceedings were

resolved.

The Hanson-Tallackson Parties also objected to the Motion to Dismiss.

They argued that dismissal at that point—fourteen months after the case was

commenced and six months after Debtors appealed the order requiring a plan to be

submitted—would only serve Debtors' intention of frustrating creditors and other

parties' interests.   They noted Debtors could simply file another bankruptcy

petition and engage in the same delay tactics all over again.   Instead, they asserted

that the appointment of an examiner was the appropriate way to handle the case and

moved the Court to do so.   The appointment of an examiner would better serve the

interests of creditors, they argued, because it would allow an investigation of

Debtors to be conducted to gather the information Debtors should have been

providing since the initial filing.   It would allow all parties to make informed

decisions as to the best course of action to take in the case.   The Keeleys joined the

11

Hanson-Tallackson Parties' objection to dismissal and agreed that the appointment of an examiner was in the best interest of creditors.

PHI, meanwhile, objected to the Motion to Appoint an Examiner.   Among other things, it asserted that appointing an examiner would serve no purpose because Debtors had no possibility of reorganizing and therefore there was no need for an examiner to report on Debtors' reorganization prospects.

Debtors argued against the appointment of an examiner because of the expense that would be incurred by the bankruptcy estate.

In the time between these motions and the hearing on them, the Court held a hearing on the Chapter 11 Trustee's motion in the KGLP bankruptcy to convert the KGLP bankruptcy to a Chapter 7.[5]   The attorney for the Grabanskis initially attempted to appeal the decision to the BAP but later dismissed the appeal.

The Court held a hearing in the case on the Motion to Dismiss as well as the Motion to Appoint an Examiner on December 14, 2011.   PHI argued that if Debtors could have filed a plan, they would have filed a plan, and Debtors' inaction was a clear admission that reorganization was impossible.   Therefore, PHI argued, there was no purpose in continuing the case.   PHI asserted that what was happening at the time was the worst of all possible outcomes—Debtors were receiving the benefit of

---

[5] This is the first of many, many hearings in these cases in which the undersigned presided.

what seemed to be an unlimited bankruptcy stay without doing anything to move the case forward.   PHI further alleged that the continuation of the case was a waste of the Court's time.   Specifically, there would be no point to litigating the adversary proceedings if Debtors could not reorganize because the outcome of the adversary proceedings would have no consequences.   As a practical matter, PHI controls the unsecured creditors' class as the largest unsecured creditor with a claim of over $7 million, and PHI informed the Court that it would never vote to confirm a plan that did not provide for full payment on its claim.   Because PHI asserted Debtors were unable to put together that type of a plan, the case had no hope going forward. Creditors Horse Creek Farms and Choice Financial joined PHI's position at the hearing on the Motion to Dismiss.

Debtors argued that for them to have a workable plan, they would need the KGLP case reconverted to Chapter 11.   PHI responded that this spoke volumes about the prospects for reorganization which were nothing more than wishful thinking.   PHI further criticized that Debtors were not even able to sketch out what their plan would look like.

The Court entered the following text order on December 30, 2011 denying PHI's motion to immediately dismiss and deferring ruling on the motion for examiner and other matters on December 30, 2011:

13

Debtors have 14 days to file the Plan and the Disclosure Statement complying with all applicable rules.  Debtors have previously ignored deadlines for filing the Plan and the Disclosure Statement.  If the Plan and the Disclosure Statement, complying with all applicable rules, is not filed, the case will be dismissed without further notice or hearing. If the Plan and the Disclosure Statement are filed, the Court will hold an expedited hearing on the sufficiency of the Disclosure Statement. A telephonic scheduling conference to set that hearing will be scheduled immediately upon the filing of the Plan and the Disclosure Statement.  At that scheduling conference, the Court will determine the need for an additional expedited hearing on whether the Plan and Disclosure Statement filed contains the basic information outlined in the Bankruptcy Code and related Rules[.]

(ECF Doc. No. 383, at 1–2.)

Debtors filed their Disclosure Statement and Plan of Reorganization on January 13, 2012.   Seven parties filed objections to the Disclosure Statement.

The Court held an initial hearing on the Disclosure Statement on February 8, 2012.   The Debtors requested permission to amend their Disclosure Statement. Most of the objecting parties urged the Court not to allow Debtors an opportunity to amend their Disclosure Statement because it was so egregiously insufficient and Debtors' Chapter 11 Plan of Reorganization was patently unconfirmable.   Instead, they urged the Court to dismiss the case outright for these failures as well as for the long list of bases previously cited in other proceedings in the case.   At the Court's suggestion, the objecting parties agreed that if the Court did not dismiss the case immediately, that they need not hold another hearing on any amended disclosure

statement and could move directly to a joint disclosure statement and confirmation

hearing.   Most of the objecting parties indicated that they would not vote to approve

any plan Debtors might propose.   The Court took the matter under advisement.

Despite the urging from the objecting parties, the Court did not dismiss the

case.   In its Ruling on Objections to the Disclosure Statement, filed on February 27,

2012, the Court found that many of the objections raised related to the feasibility of

Debtor's Plan and not the adequacy of the Disclosure Statement.   However, the

Court sustained the parties' objections regarding the Disclosure Statement's failure

to: provide a description of the available assets and their values; provide the source

of information stated in the Disclosure Statement; describe the present condition of

Debtor; list scheduled claims; indicate the accounting method utilized to produce the

financial information; provide the estimated value from recovery of preferential or

otherwise voidable transfers; and provide a liquidation analysis setting forth the

estimated return that creditors would receive under Chapter 7.   The Court ordered

Debtors to file amended schedules that accurately listed the assets available and

those assets' values and to remedy the other failures in their amended disclosure

statement.   The Court gave Debtors seven days to amend their Disclosure

Statement, directed Debtors to begin the process of solicitation for confirmation

after the amendments were made, and informed the parties that it would hear any

further objections limited to those specific areas of deficient disclosure identified by the Court at the confirmation hearing.   See 11 U.S.C. § 105(d)(2)(B)(vi) ("[H]earing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.").

On March 2, 2012, the Court approved the sale of the Unruh Parcel in the KGLP case (No. 10-31482).   On March 5, 2012, Debtors in this case filed a Motion to Extend Time to File Amended Disclosure Statement, requesting an additional fourteen days from March 2, 2012.   Debtors stated that because their proposed Chapter 11 Plan depended on their ability to farm, the sale of the Unruh Parcel resulted in a "radical change in the posture of [their] case."   (ECF Doc. No. 423.)

The Keeleys objected to the additional extension of time.   They asserted that the sale of land in the KGLP case did not provide a valid justification for giving Debtors more time to file an updated disclosure statement in their personal bankruptcy case.   They also pointed out that KGLP had been converted to Chapter 7 five months earlier so Debtors should have been operating under the assumption that KGLP's property would be liquidated and unavailable for their farming operation.

16

The Court granted Debtors' motion and gave them until March 13, 2012, to file an amended disclosure statement.   Debtors filed their Amended Disclosure Statement on March 13, 2012.

In response, PHI filed another Motion to Dismiss on March 19, 2012.   This is one of the motions to dismiss addressed in this Memorandum and Order.   In its one-page motion, PHI argues dismissal is appropriate because Debtors' proposed plan is unconfirmable and they have "grossly mismanaged the Debtors' estate and have failed to provide complete and accurate information with respect to the assets and affairs of the Debtor estate."   (ECF Doc. No. 429.)   Creditors J.R. Simplot and Choice Financial joined the motion.   PHI, J.R. Simplot, and Choice Financial also objected to confirmation of Debtors' plan.

Debtors resisted the Motion to Dismiss.   They maintained it was premature to deem their proposed plan unconfirmable because the confirmation hearing was set for May 22, 2012, and they had not had time to solicit sufficient support for confirmation.   They noted that on March 21, 2012, the Court granted the Chapter 7 Trustee's motion to sell the Lenth Parcel in the KGLP case.   Although the Lenth and Unruh Parcels were no longer available for them to farm, Debtors asserted they could find other parcels to farm.

PHI, M&I Marshall & Ilsley Bank, the Keeleys, CNH Capital America LLC, the Hanson-Tallackson Parties and the United States Trustee objected to the Debtors' Chapter 11 Plan.   Choice Financial, J.R. Simplot and Horse Creek Farms joined the United States Trustee's objection.

The Court held a hearing on confirmation at the same time as PHI's Motion to Dismiss on June 4, 2012.   The Court first took up confirmation.   Debtors conceded that the sale of the Lenth and the Unruh Parcels "dealt a blow."   When asked what land they had to farm, Debtors said they were expecting more land to "come into the fold."

PHI pointed out the following reasons to deny confirmation:   (1) the plan did not meet Chapter 11 balloting requirements—§ 1129(a)(10) requires that at least one impaired class accept the plan and that has not happened here; (2) even if they met the standards for cramdown, which they do not, the plan does not meet the absolute priority rule of § 1129(b)(2)(B); (3) based on the events in the case, the plan is not viable because it is dependent on Debtors farming the Lenth and Unruh Parcels, that land was sold, and Debtors have done nothing to obtain substitute land; and (4) the plan discriminates unfairly between creditors similarly situated.

In addition to the points raised in his written objection to the plan, the United States Trustee also informed the Court that Debtors' operating reports for the two

18

years they had been in bankruptcy indicated a negative cash flow of $1,899.27.   He

also reported that Debtors owe the United States Trustee's office $5,211.29 in fees,

and the servicing of those fees is a requirement for confirmation.

The Court denied confirmation at the hearing for all the reasons raised by the

objecting parties.   Most significantly, the Court found the plan was not feasible.   In

particular, the plan's reliance on Debtors farming the Lenth and Unruh Parcels and

Debtors' failure to secure other land to farm rendered the plan theoretical and

speculative.   It was not confirmable.   Further, the Court found that the Amended

Disclosure Statement did not cure the deficiencies outlined by the Court in its order,

and it was not approved.

Moving on to the Motion to Dismiss, PHI argued cause existed to dismiss the

case under § 1112.   Specifically, the monthly operating reports filed by Debtors

show that over the term of the case, Debtors received in excess of $500,000, but all

of it had been lost.   The most recent operating report indicates an average balance of

only approximately $1,700.   The dissipation of more than $500,000 while

accomplishing nothing in the case, PHI argued, is a clear indication of a substantial

or continuing loss to or diminution of the estate.   Debtors' inability to propose a

confirmable plan demonstrates the absence of a reasonable likelihood of

rehabilitation.   PHI further asserted that gross mismanagement of the estate was

clearly established.   It also asserted that Debtors' unauthorized use of cash collateral substantially harmed creditors.   In particular, it pointed out G&K Farms received a disaster payment that was run through Debtors' estate, and it was PHI's cash collateral.   Debtors used it without any permission from the Court, using half of it to pay its attorney and half to pay creditors who were not creditors in this case. PHI argued Debtors also failed to comply with the order of the court requiring that they file a plan within a certain time period or that they amend their disclosure statement to include certain critical components.

Debtors resisted many of PHI's arguments and asked for time to brief the issue.   The Court took the Motion to Dismiss under advisement, and provided Debtors the briefing opportunity they requested.   They filed a brief indicating they would be filing a new plan.

On November 7, 2012, with no new plan on file, the United States Trustee also filed a motion to dismiss Debtors' case.   This is the second motion addressed in this Memorandum and Order.   In his motion, the United States Trustee states, "Debtors have not paid their quarterly fees for the fourth quarter of 2011, and the first, second and third quarters of 2012 in the total amount of $6,534.78.   Failure to pay such fees is cause for dismissal . . . ."   (ECF Doc. No. 518.)   He requests that

20

the dismissal include a directive to Debtors to file any delinquent monthly operating reports and to pay any delinquent quarterly fees.

Debtors objected to the United States Trustee's motion, characterizing it as "duplicative and a pile-on."   (ECF Doc. No. 528.)   Debtors do not deny that they are delinquent in the payment of their quarterly fees.   Instead, they state that their attorney has reached out to the United States Trustee's office about the quarterly fees "but no negotiated resolution has been forthcoming."   Id.   Debtors request that if the case is dismissed, however, that it would be prejudicial and unfair to assess the claimed quarterly fees against them.   The Keeleys joined the United States Trustee's Motion to Dismiss, and Dawn Keeley submitted an affidavit in support of the motion.

The Court held a hearing on the United States Trustee's Motion to Dismiss and reheard argument on PHI's pending motion on January 9, 2013.   The Court noted it was aware that various agricultural journals and publications had been following this case.   Those publications noted that the Grabanskis had been involved in North Dakota, Texas, and Colorado operations—many with inter-related companies and creditors.   The Court noted that in July it was made aware that a judge in Colorado reversed a governmental denial of $8 million in payments to an entity in which Thomas Grabanski was a partner.   The Court did not know what

affect that ruling would have on the bankruptcies, but noted Thomas Grabanski was

quoted in an article on the award as saying that now he could make payments to

creditors and make things right.   The Court noted that part of its delay in ruling on

PHI's Motion to Dismiss was to wait-and-see if anyone in this bankruptcy was paid

from or made a claim to what seemed to be a sizable amount of money.   Because

the litigation in Colorado—in which the refund award was issued—was often cited

as the impetus for Debtors' bankruptcy, the Court wondered whether this would

reverse the problems and flow back to this estate.

The Court asked Debtors about the award.   Debtors responded that the

money is tied up in litigation in Colorado.   The Court asked how much money was

in the estate right now.   Debtors' counsel responded, "Probably zero."

Many of the creditors noted that they were aware of the money awarded in

Colorado and had followed it as well.   They noted, however, none of it has ever

been brought into this estate or offered by Debtors in this case.

The Court then ruled at the hearing that it would dismiss the case for cause

under § 1112(b)(4).   In particular, the Court held cause existed to dismiss the case

under § 1112(b)(4)(J), which provides that cause to dismiss includes the "failure to

file a disclosure statement, or to file or confirm a plan, within the time fixed by this

title or by order of the court . . . ." 11 U.S.C. § 1112(b)(4)(J).   The Court noted none

of the required filings had been made in this case.   The Court noted the plan that

was proposed was not even close to confirmable, and the Court ruled immediately in

denying confirmation.   Debtors have had the chance to amend their plan, and

nothing more has come.   The Court noted very frankly that Debtors stated their

intent to file a new plan and that with the money from Colorado, the Court believed

a new plan could emerge.   Nothing came, and the Court concluded under

§ 1112(b)(4)(J), that there was cause to dismiss the case.

The Court also ruled that § 1112(b)(4)(A) established cause to dismiss the

case.   That subsection provides that cause to dismiss includes the "substantial or

continuing loss to or diminution of the estate and the absence of a reasonable

likelihood of rehabilitation."   § 1112(b)(4)(A).   The Court ruled that there has been

a continuing loss or diminution of the estate—in fact there is no money left in the

estate—and there is no likelihood of rehabilitation in this case.

The Court also ruled that Debtors' failure to pay the quarterly fees since the

third quarter of 2011 also established cause to dismiss the case under

§ 1112(b)(4)(K).   That section provides that cause for dismissal includes "failure to

pay any fees or charges required under chapter 123 of title 28."   11 U.S.C.

§ 1112(b)(4)(K).

23

The Court left open the allegation of gross mismanagement of the estate despite its "huge concerns" that the case was three years old and there was not a penny remaining in the estate.   It said, however, that this issue might go to the issue of dismissal with prejudice or not.   The Court left the issue of whether to dismiss with or without prejudice open for twenty-one days for the parties to brief the Court on the issue.   The Court advised the parties that they needed to cite evidence to support their arguments.   For example, the Court mentioned hearing a lot about Debtor improperly transferring and hiding of assets but has seen little in the way of evidence of such conduct.

## II.   ANALYSIS

### A.    Grounds for Dismissal

Section 1112 governs dismissal or conversion of a Chapter 11 case.   It provides that "cause" to dismiss includes:

(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    gross mismanagement of the estate;

* * *

(E)    failure to comply with an order of the court;

* * *

> (J)    failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>
> (K)    failure to pay any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b)(4)(A), (B), (E), (J) and (K).   As discussed above, the Court ruled during the hearing on the motions to dismiss that cause to dismiss Debtors' case was established under § 1112(b)(4)(A), (J) and (K).

Upon further consideration, the Court concludes that cause to dismiss was also established under § 1112(b)(4)(E).   The Court ordered Debtors to file a plan and disclosure statement by January 7, 2011, and Debtors failed to comply.   See (ECF Doc. No. 181.)   Further, in its Ruling on Objections to the Disclosure Statement entered on February 27, 2012, the Court ordered Debtors to file amended schedules that accurately listed the assets available and those assets' values. Debtors did not comply.   Accordingly, § 1112(b)(4)(E) provides an additional cause to dismiss the case.

In their Brief in Support of Dismissal with Prejudice, the Hanson-Tallackson Parties addressed dismissal for gross mismanagement of the bankruptcy estate—which the Court left open at the hearing for further argument.   To support this claim, they allege that:

> [S]ince the start of this proceeding, Debtors have moved into a 4,000 square-foot home, have vacationed in South Carolina and Puerto

Vallarta, have received loans totaling approximately $22,000 from their son, and have never filed schedules which the Debtors could testify to as being accurate and Debtors have even declared their schedules are not operative.

(ECF Doc. No. 560.)   Once again, however, the Court is faced with allegations that are not supported by evidence in the record.   The Hanson-Tallackson Parties cite Debtors' schedules, statements and Amended Disclosure Statement as well as Dawn Keeley's affidavit in support of the Motion to Dismiss.   None of these, however, provides an evidentiary basis for the underlying allegations.   The Court declines to include § 1112(b)(4)(E) as a basis for dismissal of the case.

### B.   Dismissal with Prejudice

The only remaining issue is whether to dismiss the case with prejudice.   As a general rule, a dismissal of a bankruptcy petition is without prejudice.   11 U.S.C. § 349(a).   Section 349(a) provides:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a).   Section 109(g) provides:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

26

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case . . . .

11 U.S.C. § 109(g).   Taken together, §§ 349(a) and 109(g) give bankruptcy courts authority to prohibit bankruptcy filings for at least 180 days "for cause."   In re Lee, 467 B.R. 906, 918 (B.A.P. 6th Cir. 2012).

Dismissal of a bankruptcy case "with prejudice" does not have a single, universally-accepted meaning.   Ellsworth v. Lifescape Med. Assoc., P.C. (In re Ellsworth), 455 B.R. 904, 921 (B.A.P. 9th Cir. 2011) (citing Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 938–39 (4th Cir. 1997)).   Sometimes bankruptcy courts use the phrase "dismissed with prejudice" merely to invoke § 109(g) which bars a debtor from filing any bankruptcy case for a period of 180 days.   Id.

However, where there is sufficient cause, bankruptcy courts also have the authority pursuant to §§ 105[6] and 349(a) to prohibit bankruptcy filings for longer than 180 days.   Cusano v. Klein (In re Cusano), 431 B.R. 726, 737 (B.A.P. 6th Cir. 2010).   One of the causes justifying dismissal of a case with prejudice for longer

---

[6] Section 105(a) grants a bankruptcy court broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code and to prevent an "abuse of process."   11 U.S.C. § 105(a).

than 180 days is a case filed in bad faith by a serial filer.    Marshall v. McCarty (In re Marshall), 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009).    The decision to dismiss a case with prejudice for longer than 180 days is within the court's discretion.    Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 339–40 (2d Cir. 1999).

Dismissal with prejudice can also mean that a debtor is precluded from ever again seeking to discharge those debts which would have been discharged had the plan been confirmed and completed.    In re Ellsworth, 455 B.R. at 921.    In other words, the effect of "with prejudice" can be to make debts nondischargeable.    This, however, is a drastic remedy reserved for extreme situations.    Id. at 922.

PHI argues for a permanent bar of the right of Debtors to obtain discharge for the debts involved in this proceeding.    It asserts that Debtors' conduct throughout this case has been intended to abuse both their creditors and the bankruptcy process. Specifically, PHI alleges those actions include: "the filing of blatantly inaccurate and incomplete schedules, transfer of rights/assets with fraudulent intent (see generally, proceedings in the Keeley Grabanski Land Partnership case (No. 10-31482)), concealment of transactions with their counsel, and the filing of reorganizational proposals that have no hope of success but are designed simply to prolong the course of this case."    (ECF Doc. No. 556.)    It characterized the effect of Debtors' conduct as no different than the result of the filing of multiple

28

bankruptcy cases—an extended period of time during which Debtors have obtained the benefit of the bankruptcy stay.   According to PHI, "This, combined with the seeming contempt of [Debtors] for the bankruptcy process justifies dismissal with prejudice and a permanent bar of the right of [Debtors] to obtain discharge for the debts involved in this proceeding."   Id.

The Hanson-Tallackson Parties likewise request that the dismissal with prejudice bar the discharge of Debtors' debts at the time of the dismissal.   They assert that at a minimum, dismissal with prejudice should preclude Debtors from filing another bankruptcy case for a sufficient period of time (not less than a year) to allow creditors to fully adjudicate the obligations and collect from Debtors outside of bankruptcy.   They further request that the relief from stay granted to the Hanson-Tallackson Parties in this case be made permanent and that the Court order the relief from stay to automatically apply in any subsequent bankruptcy cases filed by Debtors without further motion.

Horse Creek Farms' brief in support of dismissal with prejudice focuses on why dismissal of the case is appropriate—in particular, why bad faith should also be cause for dismissal.   It does not inform the Court, however, on the type of prejudice that should be imposed or any rationale for the prejudice.

The Keeleys assert that the Court "should conclude that dismissal with prejudice is appropriate for all debts in the matter because the Debtors acted in bad faith throughout their bankruptcy case."  (ECF Doc. No. 565.)   The Court presumes this means the Keeleys seek a permanent bar of Debtors' right to obtain discharge for the debts involved in this proceeding although that is not entirely clear from the Keeleys' brief.

Debtors filed their bankruptcy case in July 2010.   Since that date, they made no realistic effort to confirm a plan of reorganization.   Even after the Court twice ordered Debtors to file a disclosure statement and plan within a specific period of time, Debtors failed to submit their Disclosure Statement and Plan until January 13, 2012, which was 18 months after they entered bankruptcy.   Following a number of objections to the adequacy of Debtors' Disclosure Statement, the Court gave Debtors seven additional days to file an amended disclosure statement to address seven specific areas of insufficient disclosure.   On March 5, 2012, the day Debtors were required to file the amended disclosure statement, they instead filed yet another motion for an extension.   Debtors' motion was granted, and they were given an additional seven days to file the amended disclosure statement.

On March 13, 2012, Debtors filed an Amended Disclosure Statement which failed to cure the defects of their original Disclosure Statement despite the clarity of

30

the Court's February 27, 2012, Order.   On June 4, 2012, a hearing was held on

Debtors' Amended Disclosure Statement in conjunction with the confirmation

hearing on Debtors' Chapter 11 Plan of Reorganization.   Ultimately, the Court

determined Debtors' Amended Disclosure Statement could not be approved.   It also

denied confirmation of their plan.   Despite all the time that has passed, Debtors still

have not proposed an alternative plan.

Since the initial filing of their petition, Debtors have sought numerous

requests for extensions of time to accomplish various tasks in the case.   Deadlines

came and went on multiple occasions.   Debtors have failed to provide accurate

bankruptcy schedules upon which parties could rely.   Thomas Grabanski admitted

he could not testify whether the schedules were true and correct, and yet amended

schedules were not filed.   Even Debtors' Amended Disclosure Statement states,

"That the debtors' 2010 schedules are no longer operative should not be surprising."

(ECF Doc. No. 427, at 15.)

This Court, through both Judges handling matters in this case, has bent over

backwards to give Debtors every possible benefit of the doubt.   The extensive

history recited above demonstrates that it is no stretch for the Court to conclude that

Debtors willfully failed to abide by orders of the Court and to appear before the

Court in proper prosecution of their case.   As such, it is appropriate to dismiss this

31

case with prejudice.   The Court prohibits Debtors from filing another Chapter 11 case for 180 days pursuant to § 109(g).   The Court is not convinced, however, that a more drastic form of prejudice is warranted.   Debtors are not serial filers, and many of the allegations lodged against Debtors are not supported by evidence in the record.

The Court has considered all other arguments and deems them to be without merit.

Based on the foregoing, the Court **GRANTS** the Motions to Dismiss the case with prejudice.   Debtors are enjoined from filing another Chapter 11 petition for 180 days.   Debtors shall file any delinquent monthly reports and pay any delinquent quarterly fees to the United States Trustee's office.

**SO ORDERED.**

Dated this 12th day of April, 2013.


**/s/     THAD J. COLLINS**
**THAD J. COLLINS, JUDGE**
**UNITED STATES BANKRUPTCY COURT**
**SITTING BY DESIGNATION**

32