UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                           Bankruptcy No. 10-30902
                                                 Chapter 11
Thomas M. Grabanski and
Mari K. Grabanski,

                        Debtors.


## MEMORANDUM AND ORDER ON
## FINAL APPLICATION FOR COMPENSATION

DeWayne Johnston, attorney for Debtors Thomas M. Grabanski and Mari K.

Grabanski, filed a Final Application for Compensation on January 16, 2013,

seeking fees and expenses he incurred related to Debtors' case.    PHI Financial

Services, Inc., the Hanson-Tallackson Parties and United States Trustee Robert B.

Raschke filed written objections to the application.

## I.   FACTUAL BACKGROUND[1]

Debtors Thomas M. Grabanski and Mari K. Grabanski filed for relief under

Chapter 11 of the Bankruptcy Code on July 22, 2010.    On August 20, 2010,

Debtors filed an Application for Approval of Employment of Attorney, requesting

that attorney DeWayne Johnston be employed to assist Debtors with all aspects of

---

[1] An extensive factual background of this case has been thoroughly discussed
in the Court's Order Granting Motion to Dismiss and is incorporated by reference.
See Docket No. 572 (Memorandum and Order dated April 12, 2013).

their pending bankruptcy proceedings.   The Court granted the application to employ DeWayne Johnson as Debtors' attorney on August 30, 2010.   The order granting the application provided that Attorney Johnston's professional employment was subject to the limitations provided by 11 U.S.C. § 328.

On October 22, 2010, Debtors filed a Motion of Debtors Pursuant to Sections 331 and 105(a) of the Bankruptcy Code for Reimbursement of Expenses of Professionals ("Application for Compensation").   Debtors' motion sought reimbursement from Debtors' estate for legal fees and expenses incurred between July 21, 2010 and September 30, 2010, in the amount of $43,121.00.   Debtor argued these fees and expenses were incurred by Attorney Johnston and his law office.

Assistant United States Trustee Bruce J. Gering and AgCountry Farm Credit Services ("AgCountry"), a creditor, objected to Debtors' motion.   The U.S. Trustee argued the motion should be denied because Attorney Johnston failed to recognize that Debtors' case and its companion case, Grabanski Grain, LLC, were two distinct legal entities with separate bankruptcy estates.   Attorney Johnston included legal fees for both cases in his application.   Further, the U.S. Trustee argued Attorney Johnston failed to provide any detail for the services rendered, time expended, or expenses incurred.   AgCountry echoed those arguments and

2

added that Attorney Johnston failed to comply with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure.

On December 1, 2010, the Court held a hearing on Debtors' motion. The motion was denied on the record during the hearing with allowance given to Johnston to re-file the application with additional information and a more complete history of the fees and expenses sought. The Court specifically desired more detail about the value of the work performed, the likelihood of success, and the progress being made toward plan confirmation. The Court entered a written order on December 13, 2010, noting the denial and leave to re-file.

Attorney Johnston had filed an amended application for expenses and compensation on December 12, 2010. He was directed, however, to re-file his application as an application for compensation. As a result, on December 13, 2010, Attorney Johnston filed an Application for Compensation. This application requested fees and expenses of $34,013.76 for the period between August 17, 2010, and December 13, 2010.

AgCountry was the only party that objected to this application. AgCountry argued the application should be denied because it failed to substantiate Debtors' ability to pay interim compensation, Attorney Johnston had yet to comply with

3

Rule 2016(a), and the services of the Johnston Law Office had not benefitted

Debtors' bankruptcy estate.

The Court held a hearing on January 27, 2011.   The Court approved the

Application for Compensation on the record.   The Court explained that it was

approving the application because Attorney Johnston was making some progress

negotiating with Debtors' creditors.   On the same day, the Court entered an Order

Granting Application for Compensation for DeWayne Johnston, Debtors'

Attorney, Period: 8/17/2010 to 12/13/2010, awarding fees of $28,871.00 and

expenses of $5,142.76, for a total of $34,013.76.[2]

Attorney Johnston filed another Application for Interim Compensation on

June 14, 2011.   He attached invoices for fees and expenses incurred December 1,

2010, through June 3, 2011.   These invoices totaled $23,853.62.

The U. S. Trustee and the Hanson-Tallackson Parties[3] objected to this

application.   At the time of Attorney Johnston's filing, Debtors had yet to file a

plan or a disclosure statement.   The U.S. Trustee objected to approval of the

_____

[2] The fees and expenses were awarded provided that none of the cash
collateral of AgCountry was used to pay the compensation and expenses approved
in the application.

[3] Colorado Farms, Hanson-Colorado Farms, James Tallackson, Carol
Tallackson, Brian Hanson, Ranell Hanson, Jeffrey Hanson and Amanda Hanson
comprise the Hanson-Tallackson Parties.   They are creditors and interested parties
in this case.

application on this point and also argued that reorganization and rehabilitation did not appear possible and that Attorney Johnston's services had not benefitted Debtors' estate.   The Hanson-Tallackson Parties also argued that Attorney Johnston's services had not benefitted Debtors' estate, that he remained non-compliant with Rule 2016(a), that he failed to substantiate Debtors' ability to pay interim compensation, and that the invoices lacked sufficient detail about the services rendered for Debtors' case.

On July 21, 2011, the Court held a hearing on Attorney Johnston's application.   The Court denied the application on the record and explained that interim compensation was not warranted because there had been no forward progress in Debtors'case.   Specifically, the Court noted Debtors had not filed a plan and disclosure statement despite the passage of a full year since the date of filing.   The Court entered an Order Denying Application for Interim Compensation on July 26, 2011, and it did not grant leave to re-file the application. Attorney Johnston made no effort for reconsideration of the Court's order.[4]

---

[4]  Any reference to the Court prior to September 15, 2011, relates to proceedings overseen by the Honorable William A. Hill.   The undersigned assumed duties in this case at that time.

5

Attorney Johnston next filed an Application for Compensation on June 8, 2012.   This application included fees and expenses of $41,651.41 incurred by the Johnston Law Office from December 14, 2010, until June 7, 2012.

The U.S. Trustee, the Hanson-Tallackson Parties, and PHI Financial Services, Inc. ("PHI") filed objections to the Application for Compensation. Each party offered similar arguments, including that Attorney Johnston had yet to abide by Rule 2016(a), that reorganization and rehabilitation were never possibilities in Debtors' case, that Attorney Johnston's services had not benefitted Debtors' bankruptcy estate, and that Debtors continued to engage in obfuscation and delay because a disclosure statement had not been approved and a plan had not been confirmed.

A hearing on the application was held on July 5, 2012, and the Court took the matter under advisement.    In July, the Court was made aware that United States District Judge for the District of Colorado reversed a governmental denial of $8 million in payments to an entity in which Thomas Grabanski was a partner.   The Court did not know what affect that ruling would have on the bankruptcies.   At the time, Thomas Grabanski was quoted in an article as saying that now he could now make payments to creditors and make things right.   Part of this Court's delay in ruling on this matter — and other pending matters — was the result of a

6

wait-and-see approach to determine if any party in this bankruptcy made a claim and/or was entitled to what seemed to be a sizable amount of money.   Because this litigation in Colorado was often cited as the impetus for Debtors' bankruptcy, the Court wondered whether the Colorado ruling would reverse some of the problems in this case and result in a flow of money back to this estate.

On January 9, 2013, the Court held an additional hearing on this and numerous other matters.   The Court inquired about the possible effect of the Colorado ruling on this and related matters.   Debtors responded that the money is tied up in litigation in Colorado.   The Court asked how much money was in the estate right now.   Debtors' counsel responded, "Probably zero."

The Court denied Attorney Johnston's application on the record without prejudice to file a final application for compensation within seven days.   The Court instructed Attorney Johnston that if he desired reimbursement, he needed to address some serious concerns the Court had.   These concerns included that: there is no money in the estate; the Court, in its July 26, 2011, order already denied the fees and expenses sought by Attorney Johnston; Debtors' proposed Chapter 11 plan was essentially "dead on arrival"; Attorney Johnston's services had not benefitted the estate; and that Debtors' bankruptcy case had been used merely as a

7

stall tactic for Debtors to enjoy the protections of the automatic stay and keep their creditors at bay.

Attorney Johnston filed his Final Application for Compensation on January 16, 2013. He included fees and expenses incurred from December 14, 2010, through January 16, 2013. He requested $40,443.92 in fees and $3,401.49 in expenses, for a total of $43,845.41. Attorney Johnston argues these fees and expenses are appropriate: because they were necessary; because Debtors' Chapter 11 plan was proposed in good faith although its confirmation was denied; because Debtors made a worthy effort to achieve plan confirmation and discharge; and because Debtors faced aggressive creditors and were still able to achieve some successful results. Further, Attorney Johnston asserts that none of the requested fees and expenses was previously denied by the Court. Johnston argues the order entered on July 26, 2011, denying fees and expenses from December 1, 2010 through June 3, 2011, did not indicate whether the denial was with or without prejudice. Attorney Johnston believes that if the Court wanted to bar reconsideration of those fees, it would have denied the fees and expenses with prejudice. Because it did not, Attorney Johnston asserts the Court should permit reconsideration.

On January 25, 2013, PHI filed an Objection of PHI Financial Services, Inc. to Final Fee Application Submitted by Debtors' Counsel.   PHI argues that the application should be denied in its entirety because Attorney Johnston did not provide a benefit to Debtors' estate and his work related principally, if not wholly, to the efforts of Debtors to abuse the bankruptcy process.

The Hanson-Tallackson Parties also objected to the application in its entirety.   They argue that Attorney Johnston failed to provide, in detail and with specificity, the benefit to the estate of the work performed; he failed to provide a lodestar analysis; he has still failed to comply with Rule 2016(a); and a portion of the fees and expenses sought were already denied by the Court.

The U. S. Trustee also filed an objection.   It argues any compensation is inappropriate because Attorney Johnston has provided no value to the estate nor made any attempt to offer a reasonable plan to Debtors' creditors.   Additionally, it argues Debtors did not make a sincere effort to reorganize their debts and submitted untimely schedules of dubious accuracy.

Debtors' case was dismissed with prejudice on April 12, 2013.[5] Ultimately, Debtors were unable to file a disclosure statement that could be

---

[5] Memorandum and Order granting motion to dismiss is incorporated by reference.   See supra note 1.

approved or a Chapter 11 plan that could be confirmed.    Debtors filed their

proposed Chapter 11 plan and Disclosure Statement on January 13, 2012.    An

Amended Disclosure Statement was filed on March 13, 2012.    During a hearing

on the filings on June 4, 2012, the Court found the Amended Disclosure Statement

insufficient and disapproved it and denied confirmation of Debtors' Chapter 11

plan.    The Court determined the plan was speculative and infeasible and did not

meet the requirements of 11 U.S.C. § 1129, and issued a written order on June 5,

2012.    Debtors did not file an amended plan or disclosure statement.    Although

Debtors filed schedules on September 1, 2010, they testified during their

depositions that they could not endorse the schedules' accuracy.[6]    Debtors did not

amend their schedules after that time.

## II.   CONCLUSIONS OF LAW

A trustee, or a Chapter 11 debtor-in-possession acting in lieu of a trustee

under 11 U.S.C. § 1107, may employ professional persons, including attorneys, to

assist in carrying out his or her duties.    11 U.S.C. §§ 327(a), 1107.    To be

employed, professional persons may not "hold or represent an interest adverse to

the estate" and must be "disinterested persons."    11 U.S.C. § 327(a).

---

[6]  This was brought to the Court's attention by Trustee Gering during the
hearing on July 21, 2011.

Employment under § 327 is subject to court approval.   Id.   "The purpose of requiring court approval of professional services is to 'avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered Chapter 11 debtors.'"   In re Dairy Dozen-Milnor, LLP, 441 B.R. 918, 920 (Bankr. D.N.D. 2010) (citations omitted).

An attorney must be employed under § 327 or § 1103 in order to be eligible to receive compensation from bankruptcy estate funds.    11 U.S.C. § 330(a); Needler v. Rendlen (In re Big Mac Marine, Inc.), 326 B.R. 150, 155 (B.A.P. 8th Cir. 2005); In re Racing Servs., Inc., Bankr. No. 04-30236, 2008 WL 822231, at *6 (Bankr. D.N.D. Mar. 26, 2008).    In this case, Attorney Johnston's employment was approved by the Court pursuant to § 327 on August 30, 2010, making him eligible for compensation from the estate.

"Approval of employment under section 327, however, does not constitute a right to be paid from the estate."   In re Miell, Bankr. No. 09-01500, 2009 WL 2253256, at *1 (Bankr. N.D. Iowa July 27, 2009) (citing Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 571 (3d Cir. 1997)).    Professional fees the Court may actually award are regulated by 11 U.S.C. § 330(a)(1).   Lamie v. U. S. Trustee, 540 U.S. 526, 529 (2004); Racing Servs., 2008 WL 822231, at *3.

11

Section 330(a)(1) provides:

> (a)(1)   After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award . . . a professional person employed under section 327 or 1103–
>
> > (A)   reasonable compensation for actual, necessary services rendered by the . . . professional person; and
> >
> > (B)   reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

The Eighth Circuit has determined that the lodestar method, calculated by multiplying the reasonable hourly rate by the reasonable number of hours required to represent the debtor, is the appropriate approach for determining reasonable compensation under § 330.   Stalnaker v. DLC, Ltd. (In re DLC, Ltd.), 295 B.R. 593, 608 (B.A.P. 8th Cir. 2003); In re Peterson, 251 B.R. 359, 363–64 (B.A.P. 8th Cir. 2000); Racing Servs., 2008 WL 822231, at *3.   "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and expertise of counsel, the quality of representation, and the results obtained."   Cox v. Swiss-Am., Inc. (In re Affiliated Foods Sw., Inc.), 472 B.R. 538, 557 (Bankr. E.D. Ark. 2012) (quoting In re Morrison, 231 B.R. 754, 758 (Bankr. W.D. Mo. 1999)) (internal quotation marks omitted).

12

To determine reasonable rates and hours for calculation, the Court considers the nature, the extent, and the value of services provided, while taking into account all relevant factors.    11 U.S.C. § 330(a)(3).    Relevant factors include:

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)–(F); In re Peterson, 251 B.R. at 364.

Additionally, § 330(a)(4)(A) directs that "the court shall not allow compensation for unnecessary duplication of services or for services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case."    11 U.S.C. § 330(a)(4)(A).    An attorney's fee application will be denied to the extent services were for the benefit of the debtors and did not benefit

13

the estate.   Kohl v. Miller (In re Kohl), 95 F.3d 713, 714 (8th Cir. 1996) (citing In re Reed, 890 F.2d 104, 106 (8th Cir. 1989)).

Applicants bear the burden of establishing they are entitled to compensation. Chamberlain v. Kula (In re Kula), 213 B.R. 729, (B.A.P. 8th Cir. 1997); In re Sportsstuff, Inc., Bankr. No. BK07-82643, 2012 WL 2860029, at *3 (Bankr. D. Neb. July 11, 2012); In re Koerkenmeier, 344 B.R. 603, 609 (Bankr. W.D. Mo. 2006).   They must demonstrate that the services for which compensation is sought were necessarily provided and that the amounts requested are reasonable. Koerkenmeier, 344 B.R. at 609; see also In re Racing Servs., Inc., Bankr. No. 04-30236, 2004 WL 2191585, at *2 (Bankr. D.N.D. July 14, 2004).

## A.    December 1, 2010–June 3, 2011

The first portion of Attorney Johnston's application seeks fees and expenses incurred between December 1, 2010, and June 3, 2011.   These fees and expenses were included in the previous Application for Interim Compensation filed June 14, 2011.   The Court denied that application on July 26, 2011.   Attorney Johnston argues, however, that the order did not indicate the denial was with prejudice, so reconsideration of the fees and expenses is appropriate.   The Court disagrees.

In a previous order, entered on December 13, 2010, the Court specifically extended to Attorney Johnston the allowance to re-file an application for

14

compensation.   The Order stated: "The Motions of Debtors Pursuant to Section
331 and 105(a) . . . are DENIED with leave granted to Debtors to re-file an
Application for Compensation to include more information."   <u>See</u> Docket No.
166.   The Court's July 26, 2011, Order Denying Application for Interim
Compensation contained no such language.   That Order stated: "After reviewing
the application, objections, and hearing the arguments of counsel, it is hereby
ORDERED, that the application is denied."   <u>See</u> Docket No. 294.   There is no
question the difference in these two orders indicated to Attorney Johnston that the
order on the application for fees from December 1, 2010 to June 3, 2011 was a
final decision.

Applicant bears the burden of demonstrating that compensation is warranted.
<u>See</u> <u>Kula</u>, 213 B.R. at 736; <u>Sportsstuff, Inc.</u>, 2012 WL 2860029, at *3 ;
<u>Koerkenmeier</u>, 344 B.R. at 609.   Attorney Johnston had several immediate
options available if he thought the issue or decision was unclear.   Most simply, he
could have asked the Court during the hearing on July 21, 2011 for clarification.
Attorney Johnston did not ask for clarification.   He also could have filed a motion
to alter or amend the July 26, 2011 order.   <u>See</u> Fed. R. Bankr. P. 9023; Fed. R.
Civ. P. 59(e).   He did not do so.

At the July 21, 2011 hearing, the Court indicated there had been no progress in Debtors' case although it had been one year since the filing of the petition.    The Court noted that in order for an attorney to receive compensation under § 330, there must be a benefit to the estate.    See 11 U.S.C. § 330(4)(A).    The Court concluded that without progress toward plan confirmation after such a considerable amount of time, there had been no benefit to the estate from the work Johnston billed for.    The Court made that clear to Attorney Johnston during the hearing. If Attorney Johnston desired reconsideration of the Court's order, he should have filed a motion to alter or amend the order then.    See Fed. R. Bankr. P. 9023; Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.")    He did not.    He cannot attempt to do so now through a later application.

Finally, Attorney Johnston could have filed leave to appeal.    While interim considerations of compensation in an ongoing bankruptcy proceeding are generally considered interlocutory orders, Dahlquist v. First Nat'l Bank in Sioux City, Iowa (In re Dahlquist), 751 F.2d 295, 297 (8th Cir. 1985); see also Gold v. Guberman (In re Computer Learning Ctrs., Inc.), 407 F.3d 656, 660 (4th Cir. 2005); Leichty v. Neary (In re Strand), 375 F.3d 854, 858 (9th Cir. 2004); Boddy v. U. S. Bankruptcy Court, W. Dist. of Ky., 950 F.2d 334, 336 (6th Cir. 1991), such

16

interlocutory orders may be appealed to the district court with leave of the court. 11 U.S.C. § 158(a)(3); see also Allen Grp. Partners v. Golden (In re Eisen), No. 10-55227, 2011 WL 6009036, at *1 (9th Cir. Dec. 2, 2011) (finding district court lacked jurisdiction to hear appeal of the bankruptcy court's interim compensation orders when leave was not sought); Mondelli v. Delzotti (In re Mondelli), No. 10-3393, 2011 WL 1211433, at *2 (D.N.J. 2011) (same).   Attorney Johnston did not attempt an interlocutory appeal to address the denial.

For all these reasons, the Court will not revisit fees from December 1, 2010, through June 3, 2011.   Similarly, the Court will not award any fees for time spent in preparing the Application for Interim Compensation which was filed June 14, 2011.   Specifically, the following fees are denied:

06/03/2011   Begin preparation of application for fees and costs (TJC / $150 / 0.70 / $105.00)[7]

06/05/2011   Review revised billing statements re: application for compensation   (TJC / $150 / 0.30 / $45.00)

06/06/2011   Preparation of application for interim compensation (TJC / $150 / 0.80 / $120.00)

06/10/2011   Complete application for interim compensation (TJC / $150 / 1.10 / $165.00)

---

[7] The parenthetical contains the initials of the person providing the services, his or her hourly rate, the time spent in a percentage of hours on the task and the total fee being sought, respectively.

06/14/2011   File second application for compensation, call to bankruptcy court re: same (TJC / $150 / 0.30 / $45.00)

06/14/2011   Prepare/serve/file motions to limit notice in 10-30902 and 10-30924 re: applications for compensation (TJC / $150 / 0.80 / $120.00)

Accordingly, these fees and expenses totaling $14,857.14 are denied.

### B.   <u>June 4, 2011 - January 16, 2013</u>

The remaining $29,988.27 of fees and expenses Attorney Johnston seeks are for the period of June 4, 2011 through January 16, 2013.   Johnston argues that Debtors' case was complex, that the fees and expenses were necessary, and that much work was in response to overly aggressive creditors or in response to Court orders.   Attorney Johnston also asserts that Debtors' Chapter 11 plan was proposed in good faith and that they made a worthy effort to achieve plan confirmation.   He additionally argues that the fees are reasonable for the length of time this case was pending and that they are consistent with the lodestar analysis and reasonable when compared to that of similarly situated attorneys providing like services in this district.

"[T]he goal of Chapter 11 bankruptcy is to marshall the debtor's resources 'to provide the best possible opportunity for a successful rehabilitation which will ultimately redound to the benefit of all creditors.'"   <u>Sosebee v. Steadfast Ins. Co.</u>,

701 F.3d 1012, 1022–23 (5th Cir. 2012) (quoting Chemtech Finishers, Inc. v.

Richardson) (In re Colortex Indus., Inc.), 19 F.3d 1371, 1277 (11th Cir. 1994));

see also Lange v. Schropp (In re Brook Valley IV), 347 B.R. 662, 673 (B.A.P. 8th

Cir. 2006) ("[T]he goal of Chapter 11 is to maximize the value of money and

property available for distribution to creditors."); In re Union Fin. Servs. Grp., Inc.,

303 B.R. 390, 419 (Bankr. E.D. Mo. 2003) ("[T]he rehabilitative goals of Chapter

11 [are] restructuring the debt obligations of the Debtors and providing the means

through which the Debtors will operate a viable business going forward.").

     "While it is not necessary to have a successful reorganization in order for

debtor's counsel to be awarded fees, fees may be denied when counsel should have

realized that reorganization was not feasible and therefore services in that effort

did not benefit the estate."   In re Kohl, 95 F.3d at 715 (citing Grunewaldt v. Mut.

Life Ins. Co. of N.Y. (In re Coones Ranch, Inc.), 7 F.3d 740, 744 (8th Cir. 1993));

Racing Servs., 2004 WL 2191585, at *6.   "Chapter 11 does not provide license to

perform services and generate fees in a vacuum without considering the

possibilities of recovery for the professional's constituents."   Racing Servs., 2004

WL 2191585, at *6.

     Attorney Johnston should have recognized early on that reorganization was

not feasible in this case.   Debtors' estate—after years in bankruptcy—has zero

funds.   Johnston admitted that to the Court during the January 9, 2013, hearing.
The estate appears to have been operating continuously with a negative monthly
cash flow.   Although Debtors have not filed monthly operating reports with the
Court, Debtors have sent these reports to the U. S. Trustee.   The U.S. Trustee
indicated to the Court during the June 4, 2012, hearing that the monthly reports
show negative cash flow.

Reorganization under a Chapter 11 plan is not feasible under these
circumstances, especially given the extent of debt owed by Debtors that would
require repayment through the plan.   See Kohl, 95 F.3d at 715 ("[G]iven that
Debtor had approximately $90,000 in remaining tax debts and penalties subject to
the six-year payment provisions of 11 U.S.C. § 1129(a)(9)(C), coupled with
Debtor's approximate $2,000 monthly income and $1,900 monthly expenses,
[Debtor's counsel] should have known that reorganization under Chapter 11 was
not feasible.").

Nonetheless, Attorney Johnston asserts that if Debtors could have secured
enough land to farm, Debtors could have made an effort to fund their plan.
Unfounded speculation on increases in a debtor's income, however, does not make
a Chapter 11 plan feasible.   See In re Kohl, 95 F.3d at 715; see also Bowman v.
Bond (In re Bond), 253 B.R. 233, 239 (B.A.P. 8th Cir. 2000 ("In other words,

20

'[s]incerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are visionary promises.'" (citation omitted)).   Heightening the speculation in Debtors' case is their failure to provide accurate schedules and financial information.   The lack of this information made informed expectations about Debtors' ability to generate income through the plan virtually impossible. See Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir. 1985).

Additionally, Attorney Johnston's argument about the possibility of reorganizing if certain things happened differently misses a larger issue.   Even if Debtors could have secured an increase of income through farming operations, the only proposed plan they offered was wholly insufficient and failed to comply with the confirmation standards of 11 U.S.C. § 1129.   The original disclosure statement had seven inadequate or missing subsections: (a) "a description of the available assets and their value"; (b) "the source of information stated in the disclosure statement"; (c) "the present condition of the debtor while in Chapter 11"; (d) "the scheduled claims"; (e) "the accounting method utilized to produce financial information and the name of the accountants responsible for such information"; (f) "the actual or projected realizable value from recovery of preferential or otherwise voidable transfers"; and (g) "a liquidation analysis setting

21

forth the estimated return that creditors would receive under Chapter 7." Debtors

filed an amended disclosure statement, but it was not approved. These issues

alone are enough to demonstrate reorganization is infeasible and therefore reduce

an attorney's compensation. See In re Crown Oil, Inc., 257 B.R. 531, 539

(Bankr. D. Mont. 2000) (finding that even if the price of oil had increased the

proposed income for the debtor's plan, the debtor's plan ignored other

confirmation requirements, making the plan not feasible and demonstrating the

debtor's attorneys' services did not benefit the estate); In re Hunt, 124 B.R. 263,

267 (Bankr. S.D. Ohio 1990) ("Much time and effort went into the preparation of

[the debtors' proposed plan and disclosure statement], but the underlying

feasibility of the proposal was nonexistent at the time the plan was offered. An

attorney should not expect to be fully compensated for such unrealistic effort.").

Moreover, Debtors did not file their proposed plan and disclosure statement

until January 13, 2012, eighteen months after filing their petition. The Court

denied their proposed plan and amended disclosure statement during the

confirmation hearing on June 4, 2012. Attorney Johnston essentially admitted at

that hearing that the Plan proposed was not feasible.

Debtors made no effort to file an amended plan or an amended disclosure

statement after that. Debtors' case was not dismissed until April 12, 2013. The

extended period of time that elapsed before Debtors filed their plan, coupled with the extended period of time between denial of confirmation and dismissal of Debtors' case — where no additional attempts were made to reorganize    — indicates to the Court that Debtors were not operating with an eye toward reorganization for a majority of their case.    This is especially true after January 2011 when the Court approved Johnston's fee application over creditors' objections.    Compensation will not be awarded for such lengthy periods of inactivity.    Crown Oil, Inc., 257 B.R. at 543 ("Attorneys and other professionals should not necessarily be blamed for the lack of management and the lack of success of a Chapter 11 debtor, but they should not be rewarded for stringing a bad case out for a lengthy period of time." (citing In re Cent. Fla. Metal Fabrication, Inc., 207 B.R. 742, 751 (Bankr. N.D. Fla. 1997)).    Furthermore, the lengthy, unnecessary delay negatively affected Debtors' creditors.    See Crown Oil, Inc., 257 B.R. at 542 ("In incurring fees while attempting to reorganize the Debtor when it was clear no reorganization was feasible, counsel worsened the position of the creditors.").    Accordingly, it is hard to find much or any of the services or expenses contained in Attorney Johnston's Application for Final Compensation aimed at reorganization.

In spite of all the forgoing analysis, the Court concludes that Attorney Johnston is entitled to some smaller amount of compensation under 11 U.S.C. § 330.   While Attorney Johnston has not shown any progress toward reorganization, he certainly has done some work.   Since the last fee hearing in July 2011, there have been about 300 additional docket entries and numerous hearings.   While the lack of progress in the case necessitated most of the activity, some small amount of work done by Mr. Johnston had value.   Thus, the Court exercises its discretion to award Mr. Johnston an additional $3,000 to cover this work.   He has not met his burden of demonstrating additional compensation beyond that amount is warranted.   He has previously been awarded $34,013.76. Attorney Johnston's Application for Additional Final Compensation is denied with prejudice with the exception of the $3,000 the Court has exercised its discretion to award.   His compensation for Debtors' case is limited to $34,013.76 that the Court previously awarded in its January 27, 2011 order, with the additional $3,000 awarded here, for a total of 37,013.76.

The Court has considered all other arguments and deems them to be without merit.

**SO ORDERED.**

Dated this 19th day of April, 2013.

_____

**THAD COLLINS, CHIEF JUDGE**
**UNITED STATES BANKRUPTCY COURT**
**SITTING BY DESIGNATION**

25